**Selma KOENIG, Plaintiff-Respondent,**

v.

**Joseph J. BABKA, M.D.,
Defendant-Appellant.**

**No. 47508.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 30, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1984.

Application to Transfer Denied
Jan. 15, 1985.

Gail L. Fredrick, Springfield, for defendant-appellant.

James F. Koester, St. Louis, for plaintiff-respondent.

GAERTNER, Judge.

Plaintiffs sued defendants Joseph J. Babka, M.D., Ronald A. Sapiente, M.D., and Incarnate Word Hospital seeking damages for injuries allegedly resulting from their negligence. At the conclusion of the evidence plaintiff dismissed her action against Dr. Sapiente and the hospital. The jury returned a verdict of $275,000 against Dr. Babka alone. Judgment was entered accordingly and he appeals. We affirm.

Defendant asserts three points of error: (1) failure to modify MAI 4.01 by substituting a descriptive phrase for "occurrence"

thus allowing the jury to award damages for an occurrence for which defendant was not responsible; (2) admission into evidence of an unqualified portion of a hospital record; and, (3) excessiveness of the verdict.

In July 1978 plaintiff went to Dr. Babka because of pain in her lower abdominal area. Dr. Babka diagnosed the problem as rectal cancer. He referred plaintiff to Dr. Sapiente, a radiation oncologist, for treatment to shrink the tumor prior to surgery. Plaintiff received radiation therapy from August 14, 1978 through September 15, 1978. Dr. Sapiente testified that he told defendant a waiting period of four to six weeks after radiation therapy was necessary before surgery and sent him a note advising surgery after four weeks. Defendant denied receiving this note and claimed Dr. Sapiente had agreed to a five week schedule, three weeks of radiation and two weeks delay before surgery. Defendant admitted this was his first experience with surgery following massive radiation. Plaintiff experienced urinary incontinence following the surgery. She was seen by Dr. Dwayne Bergmann who determined that her bladder had lost most of its elasticity. He operated on plaintiff on November 3, 1978 to reposition her urethra. After this surgery plaintiff had almost total incontinence. On January 5, 1979, Dr. Bergmann performed an ileal conduit on plaintiff to divert her urine to an externally worn bag.

The thrust of plaintiff's claim against Dr. Babka was that the urinary incontinence was caused by the inappropriate timing of the surgery too soon after radiation treatment. By way of deposition Dr. Richard C. Gardner, an orthopedic surgeon, testified that surgery should not be performed until four to six weeks following radiation therapy. He stated the area exposed to radiation is most sensitive two weeks after treatment and if surgery is performed at that time excessive bleeding results in damage. Dr. Gardner testified the damage to plaintiff's bladder and the blockage of the ureters was a direct result of the failure to wait the prescribed four to six week wait-

ing period after the radiation. Plaintiff introduced portions of defendant's deposition as admissions against interest in which Dr. Babka admitted that after he had been sued he checked medical literature and learned that four to six weeks is the recommended waiting period between massive radiation therapy and surgery.

Defendant's first point asserts error in failing to modify the damage instruction, MAI 4.01, as required by the "Notes on Use" where the evidence discloses more than one occurrence which is claimed to have caused plaintiff's injury. Defendant here argues the evidence disclosed two occurrences, radiation therapy and surgery, and there was evidence that either of these could have caused the bladder damage. Since defendant had no responsibility for the radiation therapy, he suggests that the instruction should have required the jury to find that plaintiff's damages were a direct result of the "surgery" rather than the "occurrence" mentioned in the evidence.

Defendant relies on Rule 70.02 which condemns as error any failure to follow MAI including the Notes on Use. However, the rule also provides for judicial determination of the prejudicial effect of such error and reversal is not permitted in the absence of such prejudice. *Hudson v. Carr*, 668 S.W.2d 68, 71–72 (Mo. banc 1984). For several reasons we conclude that if there was error, it was not prejudicial.

First, the record discloses the case was tried with a clear and distinct line of demarcation between plaintiff's theory that the damage was a direct result of the premature timing of the surgery and the defense that the damage was caused by the radiation therapy alone. Therefore, in the context of this record, the issue presented for resolution by the jury was an "either/or" question in which only one of two "occurrences" could have been the causative event. Such a clear-cut dichotomy was held in *Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 189 (Mo.App. 1982) to render the failure to modify MAI

4.01 nonprejudicial. In *Yoos* this court noted the maxims that in determining the prejudicial effect of a failure to follow MAI directives all instructions are to be read together, as a whole, and as being given to and considered by jurors of reasonable intelligence. *Id.* at 189–190. By its very language MAI 4.01 submits the issue of damages only after the jurors have made their finding in favor of plaintiff under a verdict directing instruction. Thus, in this case the jury did not even consider the question of damages under Instruction 9 until a finding had been made under Instruction 7 that plaintiff's damages were a direct result of defendant's negligence in failing "to wait four to six weeks before performing abdominal perineal resection surgery following the completion of radiation therapy." We find it inconceivable that reasonably intelligent jurors could be confused or misled in view of the evidence and other instructions.

■ Moreover, even if it be assumed that the evidence could be construed as showing the injury to have been caused by a combination of defendant's negligence in operating too soon and the negligence of Dr. Sapiente in administering excessive radiation, defendant would not have suffered any prejudice from the failure to modify MAI 4.01 as he would still be liable for the entire damage. Where two or more persons, although acting independently, are in combination the cause of a single injury to another, the injured person may recover for the entirety of the injury from any one or all of the tort-feasors whose acts have contributed thereto. This "indivisible injury rule" is well stated in *Glick v. Ballentine Produce, Inc.*, 396 S.W.2d 609, 612 (Mo.1965):

> The law recognizes that where 'the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury'. 1 Thompson On Negligence, § 75. *Berryman v. Peo-*

*ples Motor Bus Company of St. Louis,* 228 Mo.App. 1032, 54 S.W.2d 747, Loc. Cit. 749. (additional citations omitted).

■ Under this rule, a defendant need not suffer any injustice from being held solely responsible for an entire injury resulting from a combination of wrongs. He may seek contribution from others who participated in causing the damage merely by impleading them and requesting an apportionment of relative fault under the doctrine of *Missouri Pacific Railroad Company v. Whithead and Kales Company,* 566 S.W.2d 466 (Mo. banc 1978). *Cf. State ex rel. Retherford v. Corcoran,* 643 S.W.2d 844, 846 (Mo.App.1982). Defendant sought no such relief here. Indeed, despite the testimony of his expert witnesses that radiation was the cause of plaintiff's bladder and ureter problems, Dr. Babka in his own testimony admitted plaintiff's incontinence was a result of his surgery. Where evidence shows but a single indivisible injury which may be the result of a combination of tortious acts of a defendant and others, it is not reversible error to fail to modify the word "occurrence" in MAI 4.01. Because any one of the tort-feasors may be held liable for the entire result, a defendant cannot sustain his burden of establishing that prejudice resulted from the misdirection.

Finally, we note that defendant made no specific comment at the instruction conference regarding the failure to modify MAI 4.01. Assuming Rule 70.03, which dispenses with any necessity of making specific objections to instructions until the motion for new trial, retains some vitality after *Fowler v. Park Corporation,* 673 S.W.2d 749 (Mo. banc 1984), rather than applying that decision retrospectively, we observe the caveat of *Hudson v. Carr,* 668 S.W.2d 68 at 71–72 (Mo.1984), that such failure to object specifically may be considered in determining the prejudicial effect of a deviation from MAI. "This is especially so when the court gives a text instruction in express terms and the deviation consists in a failure to modify it. If a defect is not readily apparent to alert counsel preparing to ar-

gue the case, there is very little likelihood that the jury will be confused or mislead." *Id.* at 72.

Next defendant charges trial error in the admission in evidence of a portion of the records of Incarnate Word Hospital. The part of the record objected to was a memorandum written by a Dr. Raghunath P. Reddi which related to the consideration by a "Tumor Board" of plaintiff's treatment. The memorandum relates plaintiff's history of radiation therapy, that she "unfortunately" underwent surgery thirteen days later, and that she subsequently required a "total cystectomy and ileal conduit operation due to blockage of the ureters. This type of complication was contemplated due to the immediate surgery following the radiation therapy."

Defendant attacks the admission of this memorandum contending it was not properly qualified under the Uniform Business Records As Evidence Act, § 490.680, RSMo.1978, that there was no foundation for the opinion evidence in that the sources of the doctor's information were not developed and that the opinion was based upon hearsay rather than personal knowledge or observation.

As to the first point, defendant does not question the qualification of the entire hospital record. It was identified by the Assistant Director Of Medical Records as a record kept under her care, custody and control. She said the entries in the record were made at or about the time of the event, occurrence or treatment described and that it was an official record of the hospital. On cross-examination she conceded that she was not familiar with the procedures of the Tumor Board nor whether there was always a memorandum written of Tumor Board meetings. This lack of personal knowledge on the part of the witness forms the basis for defendant's claim

of lack of qualification of the memorandum under the Act.

 A similar contention was rejected in *Rossomano v. Laclede Cab Company,* 328 S.W.2d 677 (Mo. banc 1959). After an extensive discussion of the Uniform Business Records As Evidence Act and the need to construe it liberally because of the presumption of regularity of such records, the court concluded: "The testimony of the witness as to the 'mode of preparation' need not be based upon personal knowledge. This is in keeping with the last clause of §490.680 which provides that the record shall be competent 'if, in the opinion of the court, *the sources of information,* method and time of preparation were such as to justify its admission' ". (emphasis in original). *Id.* at 683. Thus, the "bottom line" regarding the admissibility of business records is the discretionary determination by the trial court of their trustworthiness. We find no abuse of discretion here. Indeed, since the hospital remained a defendant until the close of the evidence, the content of its records could be considered as an admission. The memorandum was obviously not prepared in contemplation of litigation, one means of demonstrating a lack of trustworthiness.

 But defendant asserts the history set forth in the memorandum upon which the opinions are based is a matter beyond the writer's personal knowledge and therefore constitutes hearsay within the hearsay. It is well established in Missouri law that "A proper expert medical opinion contained in a hospital record should ... be accorded dignity equal to that of a similar opinion from the witness stand; ..." *Allen v. St. Louis Public Service Company,* 285 S.W.2d 663, 667 (Mo.1956). That Dr. Reddi could have expressed his opinions had he testified in person is not challenged. Nor is any attack made upon the adequacy of the facts set forth in the memorandum to support the opinions.[1] Moreover, in *State*

---

1. In the memorandum Dr. Reddi described the subsequent surgery by Dr. Bergman to repair the damage to plaintiff's bladder and ureters as a "total cystectomy" (removal of the bladder). This was incorrect as the remedial surgery consisted of a by-pass of the bladder without actual removal. This error was pointed out to the jury. The nature of the remedial surgery is obviously not a factor upon which the doctor based his opinions regarding the propriety of

*v. Graham,* 641 S.W.2d 102, 107 (Mo. banc 1982) the court rejected a contention that it was error to permit a doctor to base his opinion upon the medical findings made by another doctor. A similar conclusion should be reached where the medical opinion is based upon the content of a hospital record which is received in evidence.

The case principally relied upon by defendant on this point, *Schears v. Missouri Pacific Railroad Company,* 355 S.W.2d 314 (Mo. banc 1962) refutes his argument. In *Schears* the testimony of a doctor regarding a plaintiff's past medical history was held to be hearsay requiring reversal. The court went on to say such hearsay did not suffice as a proper foundation for an opinion. "If, however, the so-called 'history' is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such 'history' must fall." *Id.* at 319. See also *Hunter v. St. Louis Southwestern Railway Company,* 315 S.W.2d 689, 696 (Mo.1958). The salient facts upon which Dr. Reddi based his opinion, the dates and extent of the radiation and the date of the surgery, were in evidence and are not disputed. Indeed, the opinions set forth by Dr. Reddi in the memorandum were merely cumulative to other testimony in the plaintiff's case. Therefore, even if the admission of the memorandum had been erroneous, it was harmless and not grounds for reversal. *Boten v. Brecklein,* 452 S.W.2d 86, 96 (Mo.1970); *Snodgrass v. Headco Industries, Inc.,* 640 S.W.2d 147, 159 (Mo. App.1982).

Finally, defendant argues the verdict of $275,000 is excessive warranting a remittitur to $60,000.

This court will interfere with the jury's assessment of damages as approved by the trial court only where the verdict is manifestly unjust and shocking to the conscience of the court. *Bender v. Burlington-Northern Railroad Company,* 654 S.W.2d 194, 204 (Mo.App.1983). The verdict in this case does not rise to such a

the timing of the original surgery. Defendant tacitly concedes this and argues only that the

level. Because of defendant's negligence, plaintiff was compelled to undergo two additional abdominal surgical procedures and is permanently required to wear external bags for the voiding of urine. These bags leak and become loose from their attachment to her side causing embarrassment and inconvenience. Medical testimony was to the effect she could anticipate kidney deterioration, formation of stones, Stomal obstruction of the bowel, obstruction of the ureters and other complications. Prior to trial she had already experienced one episode of kidney failure requiring two or three weeks hospitalization.

"The day is past when this Court and the courts of appeals engage in close scrutiny of the amounts awarded by juries for personal injuries." *Fowler v. Park Corporation,* 653 S.W.2d at 758.

Judgment affirmed.

STEWART, P.J., and MANFORD, Sp.J., concur.

mistake demonstrates that the opinions were based upon hearsay.