Peggy M. ROEDER, Appellant,

v.

AETNA LIFE & CASUALTY COMPANY, Respondent.

No. WD 38862.

Missouri Court of Appeals, Western District.

Oct. 27, 1987.

Angelo J. Falcone, Julie R. Cooper, North Kansas City, for appellant.

James H. Ensz of Ensz & Jester, Kansas City, for respondent.

Before CLARK, P.J., and TURNAGE and MANFORD, JJ.

MANFORD, Judge.

This is a civil action seeking recovery for damages pursuant to an uninsured motorist clause within an automobile insurance policy. The judgment is reversed and the cause remanded with directions.

Appellant presents four points, which allege the trial court erred (1) in failing to declare a mistrial when inflammatory statements from a prospective juror were elicited by opposing counsel; (2) in failing to admit into evidence a certain expert's opinion; (3) in amending the jury verdict; and (4) in overruling appellant's objection to improper final argument.

This action was initiated under appellant's automobile insurance policy. Appellant (plaintiff at trial and hereinafter referred to as Roeder) was the insured under an automobile insurance policy issued by respondent (defendant at trial and hereinafter referred to as Aetna). There was no dispute as to the existence of the policy, its being in effect at the time of occurrence, or that Roeder could proceed under the uninsured motorist's provision. Therefore, a brief summary of the facts describing the accident suffices.

On the night of March 1, 1980, Roeder had picked up her son at the airport and was driving to her home. It was cold, snowing, and the streets were slick. She exited I–35 at Southwest Boulevard in Kan-

sas City, Kansas. As her vehicle approached the intersection, it was struck in the rear by another vehicle. According to Roeder and her son, the other vehicle was occupied by four young men who were drunk. The other vehicle and its occupants left the scene. Roeder walked to a phone nearby, called police, and was advised that due to the bad weather, she would have to report to a local police station in person, which she did. According to Roeder, at the time of impact her vehicle was moving forward at 5 to 10 miles per hour. She and her son estimated the speed of the other vehicle as excessive, but neither observed the other vehicle before the impact.

Roeder stated that at the time of the impact, she was thrown forward and to her right, striking her right knee and right hand on the dashboard. She further stated that she struck her head on the steering wheel, and the inside of her left knee struck the steering column. Six days following the collision, Roeder went to her family physician, who X-rayed her and prescribed pain and muscle relaxant medication. According to her testimony, pain persisted, and some ten months later, she again contacted her family physician. During the intervening ten months, she stated that she had pain in her back and right knee, and had suffered from falling episodes. Roeder was examined and arthoscopy was performed to both knees, along with surgery for a displaced knee cap and torn cartilage and tendons.

The issues presented to the court and jury were whether the collision was the cause of Roeder's condition and if so, to how much she was entitled. The medical evidence established that she suffered from cervical myelopathy. A real dispute centered upon the court's ruling that a sentence within one medical report was inadmissible. That sentence read, "The consensus of the multiple evaluations is that she probably sustained significant cervical myelopathy at the time of impact, more on the right side." One medical expert stated that Roeder's cervical myelopathy could be explained by a diagnosis of multiple sclerosis.

The evidence revealed a progressive decline in the general health and muscular control of Roeder, whereby at the time of trial, she was permanently confined to a wheelchair. She testified that during her course of medical treatment, she expended $19,900.00 for medical costs for the services of twenty-two doctors. Aetna had paid $332.95 of the medical expenses.

The case was tried. The jury then returned the following verdict:

"We, the undersigned jurors, find plaintiff's damages for personal injuries to be the total sum of $5,000.00 of which the sum of $-0- is for medical expenses."

Subsequently, the trial judge amended the verdict, adding an additional $332.95 for medical expenses, raising the judgment total to $5,332.95. Post-trial motions were overruled and this appeal followed. Any additional facts deemed necessary to the disposition of this appeal will be considered *infra*.

■ Under her first point, Roeder claims the trial court erred in denying her request for a mistrial because of inflammatory remarks made by a prospective juror during voir dire. The record discloses the following:

MR. ENSZ [ATTORNEY FOR AETNA]: One of the problems that a company such as Aetna Life and Casualty Company faces in a lawsuit such as this is that of course they are a corporation and Mrs. Roeder is a person, and of course you people are all persons and probably associate a little more with Mrs. Roeder. Is there anybody on the panel that because Mrs. Roeder is an individual, private person, and Aetna is a corporation, a large company, would have a tendency to be unfair or give undue weight to the evidence presented on behalf of Mrs. Roeder?

Yes, ma'am.

VENIREMAN: Sullivan. This is going to follow me all of my live (sic). I was previously married to an attorney for many years and, you know, I know about personal injury cases. My husband now—we were divorced. He doesn't have to work, he made so much money

from personal injury cases. I mean he just looked forward to, you know, getting a good personal injury case. I must say I probably would have feelings about it.

MR. ENSZ: Okay. Would those feelings tend to favor the insurance company or would they tend to favor the individual such as apparently your husband represented, your former husband represented?

VENIREMAN SULLIVAN: They would probably favor the insurance company.

MR. ENSZ: All right. Do you feel that because of that, then, you would have a tendency to unfairly look at the evidence in favor of the insurance company?

VENIREMAN SULLIVAN: I feel—I feel that it probably would color it. It probably would color it.

The voir dire continued and just prior to the swearing of the panel, the following occurred:

THE COURT: Does that end everybody's voir dire?

MR. FALCONE [ATTORNEY FOR ROEDER]: Before we start with the strikes I want to file a motion for mistrial.

THE COURT: Say what?

MR. FALCONE: Before we start the challenges for cause I want to make a motion for a mistrial in this case, based upon the statements of juror number 21, Charline Sullivan, which I think are so inflammatory that plaintiff cannot obtain a fair, impartial verdict in front of this jury. Her comments were that essentially lawyers are money grabbers, her ex-lawyer-husband was retired off of personal injury cases.

I think, Judge, those things were so inflammatory that we can't have a fair trial with this jury.

THE COURT: I don't remember what she said.

MR. FALCONE: She got off on a tirade, as I saw it, about her ex-husband being a personal injury lawyer and he didn't have to work any more because he made such big fees, all lawyers cared for was mak-ing big fees off these cases, taking advantage of insurance companies.

MR. ENSZ: Your Honor,—

MR. FALCONE: Jim [Ensz] pushed her. I think she finally said that she was in favor of insurance companies.

MR. ENSZ: Yes, she did, and I think she should go off for cause, but I don't think that what she said would inflame the jury with regard to plaintiff's case. If anything, I guess my reaction to it was that they would have to give his clients such a great big verdict to take care of his fee that it might even be to some advantage. I don't think it hurts either way.

THE COURT: Well, a couple of observations. One, I wasn't paying that careful attention. I was aware of some comment about an ex-husband being retired. I couldn't help but note a little bit of bitterness expressed in that comment which probably is more centered on the "ex" than concepts of lawsuits. But I don't view her personal comments that prejudicial that it's necessary to discharge the whole panel. I doubt that I would have granted this kind of relief had it been brought to the Court's attention in a more timely fashion. But there's no question but what she is a candidate to be stricken for cause.

I suspect she's just kind of cranky about an "ex" not sharing the largess. That's the way I view that.

The motion to discharge the panel is by the Court overruled.

The prospective juror was struck for cause, but that did not satisfy Roeder. On this appeal, she asserts that the above-quoted remarks of the prospective juror created an impression in the minds of the other prospective jurors that her attorneys were in court on her behalf so that they (the attorneys) could retire. Roeder charges that the trial court erred in not granting the motion for a mistrial and in discharging the panel. She postures her charges in part upon the court's statement, "I don't remember what she said", and concludes from such statement that the court did not devote full attention to the

voir dire, thus abusing its discretion by not granting the mistrial motion.

At first blush, it might appear that Roeder's complaint was well reasoned. The record, however, dispels the soundness of her assertion in that the trial court explained what was observed and noted an animosity by the prospective juror toward her former spouse.

A fair reading of the transcript leads to the conclusion that the trial court, under the facts and circumstances, did not abuse its discretion in denying Roeder's motion for a mistrial (motion to quash panel). An interpretation equally as viable as that insisted upon by Roeder is that the trial judge was not led to believe that the prospective juror's remarks were so controversial as to warrant quashing the entire jury panel.

■ Wide discretion must be afforded the trial court concerning the granting or denial of a motion to quash a jury panel upon the expression of prejudice or bias by a prospective juror. *See State ex rel. Missouri Highway and Transportation Commission v. Johnson*, 658 S.W.2d 900, 903 (Mo.App.1983).

There being no merit to Roeder's point one, it is ruled against her.

■ Under her point two, Roeder charges that the trial court erred in refusing to admit into evidence a certain portion, or sentence, contained in a letter executed by one Dr. Youmans to another physician, a Dr. Brown, which read, "The consensus of the multiple evaluations is that she probably sustained significant cervical myelopathy at the time of the impact, more on the right side."

The medical evidence of this trial was submitted by deposition and medical documentation. Roeder postures her complaint on this issue upon a double premise: The first premise is that Aetna stipulated to the admission of the letter containing the above statement during the deposition testimony of another physician, Dr. Gollerkeri. Second, Roeder premises that regardless of whether Aetna properly objected, the "sentence" was part of the medical records and

was admissible under the Uniform Business Records as Evidence Act, § 490.680, RSMo 1986.

Roeder was examined by a group of physicians, which included Dr. Youmans, at the Myesthenia Gravis Clinic. The disputed sentence was within a letter written upon the stationery of the clinic. Roeder testified that several neurological tests were administered, which revealed neurological impairment. Dr. Youmans and one Dr. Summerskill found post-traumatic right hyperreflexia, post-right Babinski sign, and post-traumatic right-sided loss of perception of toe position, and stated that Roeder suffered from cervical myelopathy.

Roeder's position is, of course, that the cervical myelopathy was the result of the impact. Aetna, of course, took the position that Roeder's condition could be included within a diagnosis of multiple sclerosis and there was insufficient evidence connecting Roeder's condition to the impact as the causal factor.

Disposition of this issue required the review of both the trial transcript and deposition materials. When the deposition of Dr. Gollerkeri was taken, the doctor stated that he needed his medical records in order to testify in his deposition. The following discloses what occurred relative to the admission of the medical records as business records:

Q. [BY MR. ENSZ] All right, and did Dr. Lewis correspond with you with regard to his treatment and evaluation?
A. Yes, he did. I am looking for the letter. Do you happen to have a copy there of the letter?
Q. I do have a copy, I believe.
MR. FALCONE: You know, Jim, I think at this point we ought to put his whole record into evidence if he's going to testify from it.
MR. ENSZ: I don't have any objection in putting his whole record into evidence. However, with regard to certain portions of it that may—you know, he didn't rely on or happened to be there because of reasons that ultimately, you know, might not be admissible, I would want to con-

tinue to have the possibility of making certain objections at a later time.

No, I don't have any problems of having his whole record attached to the deposition as, you know, part of the business record subject to, as we go through, his stating that some of it isn't or is there, you know, it shouldn't be there.

MR. FALCONE: I guess what I'm saying is, this your witness, if he is going to testify to his record, it ought to be in your deposition as an exhibit, an exhibit of yours, for you.

MR. ENSZ: I have—

MR. FALCONE: I think you ought to offer them, is what I am saying.

MR. ENSZ: I have no problem and I am sure that when we complete this, I will ask for his entire record to be attached to the deposition.

The record of the Gollerkeri deposition reveals that Aetna agreed to the attachment of the medical records for purposes of the deposition and waived identification of the records.

From this, Roeder concludes that Aetna stipulated to the admission of the entire medical record file, including the letter with the controversial sentence. Her conclusion is erroneous.

First, the record indicates, *supra*, that Aetna reserved any objection to the admissibility of the medical records that it may make at a later time, by stating:

I don't have any objection in putting his whole record into evidence. However, with regard to certain portions of it that may—you know, he didn't rely on or happened to be there because of reasons that ultimately, you know, might not be admissible, I would want to continue to have the possibility of making certain objections at a later time.

Second, Aetna did not waive their objection to the admissibility of the letter because even had the objection been raised during deposition, the problem could not have been obviated at that time. Rule 57.07(d)(3) states:

**As to Taking of Deposition.** (A) Objections to the competency of a witness or to the competency, **relevancy, or materi-** **ality of testimony** are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time. (B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, **in the form of the questions or answers,** in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, **are waived unless seasonable objection thereto is made at the taking of the deposition.** (emphasis in original)

The testimony necessary for purposes of identification and foundation of the letter could not have been supplied at deposition since the deponent was not the author of the letter. Therefore, the objection is not waived.

Furthermore, the trial transcript reveals that this issue was taken up prior to trial under a motion in limine offered by Aetna. The following discloses what occurred:

MR. ENSZ: Your Honor, there are a couple, the first of which is the defendant's motion in limine which has earlier been filed with the Court, and the other are suggestions in support of defendant's motion which was discussed outside the hearing of the court reporter previously, but in which the position taken by the defendant is that although there has been an agreement between the parties that certain medical records will be stipulated to as the medical records of the plaintiff in the lawsuit and will be presented and be available as evidence and reference can be made to them in the same fashion that reference could be made to them by the custodian of the particular records, that there is one entry that defendant objects to in a record from Dr. Youmans which is found at the fourth paragraph at page 129 of the medical records exhibit, and it's dated September 15th and it's in a letter to Dr. William Brown.

After discussing various aspects of plaintiff's situation, medical situation,

and relating to certain examinations that have been done by other doctors previously, Dr. Youmans concludes by stating the consensus of multiple evaluations is that she probably sustained significant cervical myelopathy at the time of impact, more on the right side.

I object to any reference being made to this both from the time of voir dire by counsel or reference being made to it by any witness during the course of the hearing in this matter, and again in my suggestions in support I state my reasons why.

Through counsel, Roeder objected, stating that under *Koenig v. Babka,* 682 S.W.2d 96, 100 (Mo.App.1984), medical records are to be accorded the dignity equal to a similar opinion offered by a witness at trial. That *Koenig* contains such a declaration is undisputed. However, that statement begs the question of admissibility. Indeed, in *Koenig,* the court pointed out that admissibility of business records in accord with § 490.680 is within the discretion of the trial court.

The record further reveals Aetna's objection to the controversial sentence:

MR. ENSZ: Even prior to the time we took this I had advised Mr. Falcone that I objected to that particular portion however it might be used.

I would also indicate for the record that Gollerkeri specifically stated that he did not rely in any way, did not follow Dr. Youmans' (sic) opinion.

MR. FALCONE: He said he didn't agree with his opinion.

MR. ENSZ: He didn't agree with his opinion and that it was not a basis for any conclusions that he reached. So therefore, even though it's a part of his records, it is not—and, like I said, I said the entire record of this is—that it's admissible for the purpose of the deposition.

The trial court then engaged in an in-depth inquiry of this issue and concluded:

Number two, the fact that somebody waived the identification and foundation of business records doesn't mean it's a blanket reception if other reservations might be made of which I have not been informed, and that is the usual practice of reserving all objections as to relevancy, materiality and so forth. Just to waive the identification is one proposition without the necessity for further foundation. The second proposition is everything waived. That is materiality, relevancy and so forth, or other objections. I don't know what your situation is, and I'm going to handle it this way.

MS. COOPER: [ADDITIONAL ATTORNEY FOR AETNA): Your Honor, that was the—

THE COURT: Whenever plaintiff intends to comment on and offer apparently the troublesome portion of that record, you can advise counsel for defendant, as well as the Court, and we can take it up at that time.

I mean your record is just totally devoid of anything meaningful. I can't tell in advance whether some evidence is relevant or material or admissible just out of pure context unless it's so obviously clear and screaming that the whole world would agree.

On the surface it would appear from the written document that the defendant objects to a certain part of an apparent record that may recite something to the effect as follows:

"The consensus of multiple evaluations is that she probably sustained significant cervical myelopathy at the time of impact, more on the right side."

Obviously the record doesn't know what the phrase "multiple evaluations" means. If it's that opinion maker's own multiple evaluations, that's different from the evaluations of other people. And I can't tell. And because in the course of the trial certain evidence which on the surface may be admissible, may be admissible by reason of other events and other evidence that's admitted in the course of the trial, I don't intend to make that decision at this time, because the record is inadequate.

I'm just saying whenever, if ever, plaintiff intends to offer that portion of that record of which defendant com-

plained, first make that fact known and we can dispose of it at that time.

The trial court's conclusion, that waiver of identification and a stipulation of attachment of the medical records to the deposition did not waive any trial objection, was absolutely correct. Such evidence was still subject to our rules of evidence and timely objection. The record reveals that Aetna timely objected to the use of the controversial sentence and that its objections were sustained. Roeder is incorrect as to both her premises as regards waiver to object and that the sentence was admissible as part of the business records, and therefore admissible pursuant to § 490.680. Rule 57.07(a) and our case authority simply point out the error of Roeder's assertion.

■ Another basis for finding that the trial court did not err in its refusal to submit the controversial sentence is that this court is convinced the sentence, on its face, was not admissible. The sentence was not a medical opinion of Dr. Youmans, or at least it cannot be concluded that it was, but rather, the sentence lends itself to the conclusion that the "consensus" referenced therein might be that of other doctors or anyone else. In addition, the controversial sentence does not reference to whom Dr. Youmans is referring, and other medical evidence, while stating Roeder suffered from cervical myelopathy, did not suggest the impact as the causal factor.

The record herein reveals the trial court concluded that the sentence failed to disclose Dr. Youmans' sources of information, thus rendering the source insufficiently reliable. This decision was within the sound discretion of the trial court. From a fair reading of the record and deposition material herein, it must be concluded that the trial court did not abuse its discretion in denying the admission of the controversial sentence. There is no merit to Roeder's point two and it is ruled against her.

■ Under her point three, Roeder complains that the trial court erred in having amended the jury verdict.

The record discloses that the jury returned its verdict as noted above. Roeder

points out the inconsistency of the verdict revealing the award of $5,000.00 as her damages and a zero amount for medical cost recovery. She points out that the evidence revealed her expenditure of $19,-900.00 for medical cost. She claims an inconsistency in the verdict.

Roeder took no action relative to the inconsistency of the verdict prior to the discharge of the jury. There was a subsequent amendment to the judgment by the trial court by the addition of the sum of $332.95, making the total judgment $5,332.95. The trial court erred by its amendment to the judgment. It had no authority to add the sum of $332.95. However, such error does not mandate a reversal of this cause.

■ The verdict was inconsistent. Roeder, however, is not entitled to any relief by virtue thereof. The matter of inconsistent verdicts has long been a controversy in our jurisprudence.

The Missouri Supreme Court has ruled the question. In the case of *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986), it was ruled that if a verdict is inconsistent to the point of being self-destructive (a contention by Roeder herein) and such inconsistency is not presented to the trial court prior to the discharge of the jury, then any claim of inconsistency is waived. *Douglass* overruled *Scott v. Davis*, 684 S.W.2d 872 (Mo.App.1984), and *Stroud v. Govreau*, 495 S.W.2d 682 (Mo. App.1973). Roeder is bound by the ruling in *Douglass*. Her pleas that the *Douglass* ruling was so recent prior to her own trial do not amend or in any fashion alter the requirement that this court is bound to follow the most recent ruling of the Missouri Supreme Court. *Douglass* was the law at the time of Roeder's trial.

■ As to Roeder's further contention that the verdict was against the weight of the evidence and the trial court erred in its refusal to grant a new trial on that basis, is without merit in that this court does not pass upon the question of the weight of the evidence. *See Lee v. Mirbaha*, 722 S.W.2d 80, 85 (Mo. banc 1986), and *Veach v. Chica-*

**946**

*go and North Western Transportation Co.,* 719 S.W.2d 767, 769 (Mo. banc 1986).

There being no merit to Roeder's point three, it is ruled against her.

■ Under her final point, Roeder charges the trial court with error in having overruled her objection to comments in final argument made by counsel for Aetna. The record discloses the following:

[BY MR. ENSZ]: You can take a look at Robert Drisko, Chester Fee, Fred Reckling, Howard Ellfeldt, David Cooley, John Pazell. All those people saw her for her knee. Not one of them, not one of them related her knee condition to the accident. And there's something else that I think is very interesting. Every one of those people are in the general metropolitan area. They could have been brought in over on the Missouri side, and they had a right to do it.

MR. FALCONE: Your Honor, I object. (The following proceedings were had in the presence but out of the hearing of the jury:)

MR. ENSZ: I resent being interrupted.

MR. FALCONE: Your Honor, the witnesses are equally available to both sides and we think that's a prejudicial comment.

MR. ENSZ: They are treating physicians of the plaintiff and they are available to both sides, but he has chosen not to bring them in to court to testify for him, and he has the opportunity to subpoena them. If they were in fact going to say something with regard to relating the knee condition or the back condition to the accident, it is a reasonable inference that he would have subpoenaed them into court if they're on the Missouri side and he would have subpoenaed them by notary public on the Kansas side and gotten their deposition if they were there.

THE COURT: Well, the question has multiple problems. I heard a list of names I never heard of during the course of the trial, which means the record never heard of them either, because the record doesn't know who all those people are.

The general proposition is a party may ask the jury to make an unfavorable inference or there is an unfavorable observation that can be made, putting it better, it may be inferred maybe that the witness' (sic) testimony wouldn't be favorable, or wouldn't have an interest in coming in to testify. There isn't a question of equal availability whatsoever. I don't know, and neither does the record. I listened to a bunch of names that the record never heard of before or that have anything to do with the case.

MR. ENSZ: Your Honor, for the sake of the record I would say that these are medical records—

THE COURT: No. We're bound by whatever the evidence of record is.

MR. ENSZ: But, Your Honor, the point that I make is that prior to the time that we started this trial we stipulated, and we stipulated to waive all objections with regard to these records that I'm making reference to now, and they are part of the record, they're before the Court and they're available—

THE COURT: Not for the purpose of this kind of an argument. There may be inferences that can be drawn from records of certain physicians, but I'm not going to sort out those that are revealed by the record proper. There's a vast difference between an exhibit and a bunch of records that are admitted qualifiedly without further identification. That isn't evidence in the case whatsoever.

MR. ENSZ: Your Honor, I disagree with that and I take—

THE COURT: Well, you can preserve your objection. My point is it makes it difficult because I can't draw a line between a comment that can be made on this witness but not on this witness. There is an inference that can be drawn on a particular point. But there has to be a foundation in the record that would support an argument on that unfavorable inference proposition.

MR. ENSZ: Your Honor, there is, because—and I would like to make this for the record—that record reflects from early on that there was a stipulation

made between the plaintiff and the defendant that the medical records could be used for all purposes and all objections to having them read from, with one exception, were waived at the time we started the trial. Therefore, those records are all before the Court. The Court does have notice and knowledge of them.

THE COURT: No, the Court does not.

MR. ENSZ: Well, the Court has not specifically looked at them at this point, but from the standpoint of being evidence, they are in evidence, they are evidence in the case.

THE COURT: I don't think anybody's listening. You have a right to make a valid comment upon a party's failure to call as a witness somebody who would be expected to testify favorably. No question about that. But as to a list of people, whose names don't otherwise appear in the record, I can't make that distinction and I'm not going to sort out yes, no, yes, no. I'm not going to do it. You can make a valid argument of those obvious witnesses.

MR. ENSZ: Okay.

THE COURT: And an inference can be drawn on that point. But I'm not going to sit here and sort out what you can do and can't.

MR. ENSZ: Okay. Your Honor, as I understand your ruling, then, I can make reference to those doctors, treating doctors, who in fact have been raised by plaintiff as giving treatment to the knees. He has made specific reference to those records, I can make reference to those doctors as not being here to testify and give an opinion.

THE COURT: As to a certain element perhaps.

MR. ENSZ: Yes, and that's all I'm doing.

THE COURT: But it's got to be a carefully combined argument.

MR. ENSZ: I understand that it's limited to the fact that they're not here to testify as to a relationship between the accident and the knee condition.

THE COURT: That's a legitimate argument.

MR. ENSZ: Okay. That's all I'm wanting to do.

THE COURT: No. Well, I'm sorry. If that was all you wanted to do, there wouldn't have been an objection. That's not a correct statement because I heard names that came up out of the blue for the first time.

The record reveals that the medical reports of those doctors referenced in Aetna's final argument were admitted into evidence. The record further reveals that the objection offered by Roeder was never ruled upon by the trial court. The physicians referenced in the above argument were treating physicians of Roeder, and Aetna was entitled to comment upon their not appearing as witnesses. *See Mathews v. Chrysler Realty Corp.,* 627 S.W.2d 314, 317 (Mo.App.1982).

Furthermore, the above record discloses that the matter was resolved by counsel for Aetna, referencing only the physicians whose medical records had been read. Roeder took no further exception in the matter. By such inaction, there is, in reality, nothing preserved for this court to review. *See Young v. Missouri Public Service Co.,* 374 S.W.2d 59, 66 (Mo.1964). Rule 84.13(a). There is no merit to Roeder's final point and it is ruled against her.

Respondent's motion for damages for frivolous appeal is denied.

The judgment of the trial court is reversed and the cause remanded with directions to the circuit court to enter judgment in the total sum of Five Thousand Dollars ($5,000.00) in favor of appellant.

All concur.