Jason PETERS, et al.,
Plaintiffs–Appellants,

v.

JOHNSON & JOHNSON PRODUCTS, INC., et al., Defendants–Respondents.

No. 55322.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 23, 1990.

Daniel R. Devereaux, St. Louis, for plaintiffs-appellants.

Arter & Hadden, George Gore, Victoria Vance, Cleveland, Ohio, Evans & Dixon, Gerre S. Langton, St. Louis, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

This is an appeal of a judgment in accord with a jury verdict. The appellant alleged that his mother, Sheri Peters, died on November 27, 1983 as a result of contracting toxic shock syndrome (TSS) from her use of respondents' defective o.b. tampon.

█ The transcript reveals that the appellant prior to trial discarded his theories of negligence and pursued his cause of action on the sole theory of a defective commodity in a strict product liability claim. Before we address appellant's numerous claims of trial court error, we are reminded of our Supreme Court's admonition that the singular inquiry in a strict product liability claim is the defective condition of the product not the manufacturer's knowledge, negligence or fault. *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 438 (Mo. banc 1984). Further, in *Racer v. Utterman*, 629 S.W.2d 387, 395 (Mo. App.1981), we observed that strict product liability is not a traditional cause of action as it now exists and that knowledge, fault or conduct of the defendant is simply no longer relevant. Strict liability in tort imposes a duty on a manufacturer not to introduce into commerce an unreasonably dangerous product—whether that danger arises from defective manufacture, defective design, or failure to warn of danger. The breach of that duty occurs by the act of introducing such product into commerce. That is the only conduct which is relevant to the manufacturer's breach of duty.

█ Appellant's first contention of error is that the trial court erred in excluding evidence of consumer complaints, adverse reaction reports, TSS case reports, and other company documents establishing known cases on the grounds they were inadmissible hearsay.

A trial court has considerable discretion in the exclusion of evidence and unless there is an abuse of that discretion its action will not be grounds for reversal.

Appellant recognizes this principle but relies heavily on *West v. Johnson & Johnson Products, Inc.*, 174 Cal.App.3d 831, 220 Cal.Rptr. 437, 454 (6 Dist.1985) where the California court allowed evidence of consumer complaints. In *West*, the plaintiff alleged four causes of action, negligence, breach of express warranty, breach of implied warranty of fitness and strict product liability based on defects in design and manufacture. The fourth allegation also included an allegation relating to punitive damages. The trial court, relying on California's Evidence Code, permitted the consumer complaints. After plaintiff rested, she advised the trial court that she would proceed solely on her fourth cause of action, i.e., strict product liability. J.J.P. made no request for a limiting instruction nor afforded itself the opportunity to point out in direct and cross-examination the dissimilarities of the complaints. Under these circumstances the trial court allowed that evidence to be admitted.

This reliance on *West* is inapposite. The facts and circumstances in *West* are dissimilar and we hold that the trial court did not abuse its discretion in this case in excluding the proposed evidence.

█ Appellant also argues that the consumer complaints should have been admissible under the business records exception to the hearsay rule. For business records exception to the hearsay rule to be admitted in evidence we look to § 490.680 of The Uniform Business Records as Evidence Law. It clearly states evidence shall be competent "if, *in the opinion of the court*, the *sources of information* method and time of preparation are such as to justify its admission." Thus, "the bottom line" regarding the admissibility of the business records is the discretionary determination by the trial court of their trustworthiness. *Koenig v. Babka*, 682 S.W.2d 96, 100 (Mo. App.1984). We find no abuse of discretion here. Although found by appellant among the respondent's business records during discovery, these unsolicited letters and unsubstantiated reports from alleged tampon users do not stand as to their trustworthi-

ness and the court correctly forbade their introduction.

Appellant next argues that the court erred in excluding evidence of scientific knowledge, events and developments and medical and scientific literature subsequent to 1983. However, the transcript reflects that the trial court deferred ruling on the matter until the issue came up as the evidence was presented. On the first day of trial, during appellant's direct examination of Dr. Michael Graham appellant sought to introduce an epidemiological study performed by the Centers of Disease Control ("CDC") published in 1987. Appellant contended that the study, known as CDC III, purported to prove that o.b. tampons were defective because of an increased statistical association with cases of TSS. Over objection, the court allowed CDC III to be received. Appellant was permitted to use CDC III. Thereafter, the appellant was permitted to cross-examine the respondent's experts and witnesses about their interpretation of and the significance they attached to the findings reported in CDC III. Appellant was also permitted to make further reference to CDC III during his closing argument to the jury. The record makes it clear that the appellant was not precluded from making use of post–1983 evidence in his effort to prove a defect in the o.b. tampon.

Further, contrary to the appellant's representation in his brief, CDC III was not the only post–1983 document to be admitted into evidence. A 1987 article by Dr. Merlin Bergdoll which reported the results of his studies of the effects of different tampon fibers on the growth rates of staph aureus bacteria and proliferation of the TSS toxin known as TSST–1 was also received into evidence. Point II is denied.

■ In Point III appellant challenges the court's ruling to exclude all evidence of and reference to aggravating circumstances. The specific evidence the appellant refers to would have been admissible to enhance damages. However, since the jury decided only liability against the appellant and never reached the issue of damages, whatever error there was in excluding the evidence was harmless. The "refusal to admit evidence does not constitute reversible error unless it would have changed the result reached." *Green v. Stanfill,* 641 S.W.2d 490, 492 (Mo.App.1982). When the excluded evidence relates to damages, the error, if any will be considered harmless if the jury rules against the appellant on the issue of liability. *Jensen v. Walker,* 496 S.W.2d 317, 320 (Mo.App.1973), citing *Mead v. Grass,* 461 S.W.2d 708 (Mo.1971). This basic rule is reiterated in a source relied on by the appellant, *Guthrie v. Missouri Methodist Hospital,* 706 S.W.2d 938 (Mo. App.1986). In that case, our Kansas City brethren determined that the erroneous exclusion of damage evidence was harmless since the jury never reached the issue of damages.

■ In his fourth point relied on appellant claims that the trial court erred in excluding the alleged statement by decedent to her sister that the decedent's menses began on Tuesday, November 22. Since the appellant never made a proper offer of proof, this alleged error has not been properly preserved for review. Moreover, the trial court's ruling was a correct application of the hearsay rule. Appellant's contention that the decedent's statement falls within an exception is unfounded.

■ First there is no evidence to show that the decedent's statement would fall within the exception for spontaneous declarations of bodily conditions. The case law developing that exception does not apply to the decedent's statement at issue here. In *Breeding v. Dodson Trailer Repair Inc.,* 679 S.W.2d 281 (Mo. banc 1984) Judge Gunn recognized the principle that statements made to a physician, or contained in hospital records, even if characterized as medical history, are admissible insofar as such statements are reasonably pertinent to diagnosis and treatment. *Breeding* at 285. Here, the decedent's statement was not made to hospital or medical personnel and was not made for purposes of diagnosis or treatment. Rather, decedent made her alleged statement to her sister while the two women were standing in line at the

checkout stand of a Supermarket five days prior to her death.

◼️ The appellant's argument that the hearsay statement qualifies as an excited and spontaneous declaration of a contemporaneous event is also untenable. The onset of menses described by the decedent occurred at least 24 hours before the declaration was made and would hardly be expected to generate the degree of excitement necessary to cause the statement to qualify as an excited utterance exception to the hearsay rule.

◼️ In his fifth point relied on appellant claims that the trial court erred in excluding evidence in the medical examiner's report and testimony by Dr. Graham concerning the brand of tampon that decedent was wearing at the time of her death.

As mentioned above, the "bottom line" regarding the admissibility of business records is the discretionary determination by the trial court of their trustworthiness. *Koenig v. Babka*, 682 S.W.2d 96, 100 (Mo. App.1984). We find no abuse of discretion. Dr. Graham told the court at the side bar that the handwritten reference to o.b. tampons was made by the medical examiner's investigator, who did not testify, based on a phone conversation with the decedent's father. However, earlier in the trial the decedent's father testified that he had absolutely no knowledge about his daughter's tampon usage habits, sufficient for the trial judge to exclude the admission of such alleged evidence. Therefore the accuracy and reliability of that information was open to serious question.

◼️ Appellant next argues that the trial court erred in admitting evidence that decedent was on welfare and that she smoked cigarettes. This issue too is left to the discretion of the trial court. The admissibility of questionable evidence is considered to be a matter within the sound discretion of the trial court. *Lawson v. Cooper*, 475 S.W.2d 442 (Mo.App.1972).

The fact that the decedent received government assistance payments was relevant to the damage claim against which the defendant's were required to defend. In his petition appellant was seeking an award for loss of support. This made the type, amount and extent of support which the decedent provided a legitimate issue in the case. The trial court did not abuse its discretion.

◼️ We also do not find an abuse of discretion by the trial court in allowing respondent to cross examine decedent's sister about the smoking habits of the decedent. This inquiry, even if we were to consider it improper, does not come within prejudicial error requiring reversal.

◼️ Appellant's seventh point relied on claims that the trial court erred in excluding the deposition of Dr. Kenneth Kraskin, respondent's employee. During his case in chief, appellant sought to read into evidence the deposition of Dr. Kenneth Kraskin. The deposition in question was taken less than a week prior to trial before a court reporter licensed and authorized only by the State of Kansas. The reporter accompanied appellant's attorney to New Jersey.

The trial court inquired whether signature had been waived. When it was learned that the witness had not read the transcript and that the respondent did not waive signature, the court ruled that the deposition could not be read until the witness signed and if need be, corrected the transcript. The trial court's ruling was a correct interpretation and application of Rule 57.03(f) which provides: (f) Submission to witness; changed; signing the deposition shall be submitted by the officer to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Neither the witness nor respondent waived the reading or signature.

The court then ordered that the deposition transcript be sent by Federal Express to New Brunswick, New Jersey where the witness was instructed to read, sign and return the deposition as soon as possible, by Federal Express, so that it would be available for use by the appellant at trial.

Two days later, the deposition was returned to St. Louis and available for the appellant's use. Appellant's counsel later explained that he rested without using the Kroskin transcript because he introduced into evidence most of the documents that he needed. Appellant's seventh point is denied.

Appellant's next argument is that the trial court erred in refusing to allow appellant to impeach the testimony of Dr. Judith Esser–Mittag by cross-examining her on the scientific findings of CDC III. However a review of the record reveals that appellant had a full and complete opportunity to cross-examine the witness. Appellant's point is denied.

Finally, appellant raises two further issues which allege abuse of the trial court's discretion. An examination of the record reflects that the trial court did not abuse its discretion concerning either issue and any additional discussion would not be useful or have any precedential value. Rule 84.16(b).

All ten of appellant's points are denied. The judgment of the trial court in favor of respondents is affirmed.

CRANDALL and KAROHL, JJ., concur.