**Cheryl LINEBERRY,
Plaintiff/Appellant,**

v.

**Bill SHULL and Vickie Smith,
Defendants-Third Party
Plaintiffs-Respondents,**

**and**

**Clifford Frock and Dorothy Frock,
Third-Party Defendants-Appellants.**

**No. WD 35945.**

Missouri Court of Appeals,
Western District.

June 4, 1985.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled and
Denied July 30, 1985.

J. Kirk Rahm, Sedalia, for appellant Lineberry.

Donald G. Stouffer, Marshall, for appellants Frock.

David P. Macoubrie, Chillicothe, for respondent Shull.

Jack Lukehart, Brunswick, for respondent Smith.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

Plaintiff, Cheryl Lineberry, and her parents, third-party defendants, appeal from a verdict in favor of defendants and third-party plaintiffs, Bill Shull and Vickie Smith. Plaintiff complains of the court's actions concerning voir dire, direct examination of plaintiff's expert, examination of defendant's expert, and the amount of time allowed her by the court for closing argument. We affirm the judgment in favor of defendants which renders the issues raised by third-party defendants moot.

On July 18, 1974, Cheryl Frock, now Cheryl Lineberry, was a passenger in a car operated by defendant Vickie Smith. Her vehicle was struck by one operated by defendant, Bill Shull, in the intersection of two gravel roads. The force of the collision threw Ms. Smith into plaintiff who was thereby thrown against the passenger door.

Ms. Lineberry was treated for a cerebral concussion at St. Joseph Hospital. Upon her release, the treating physician, Dr. Gregory Pucci, stated in his report that she would make a full recovery.

On November 22, 1974, plaintiff's parents, Clifford and Dorothy Frock, executed a release in favor of defendants for any claims they had arising from the accident and a separate agreement to indemnify defendants for any damages Cheryl might eventually recover. The Frocks remembered being paid for the releases but not the amount.

In 1977, plaintiff suffered a series of seizures and was diagnosed as having epilepsy.

She brought suit against defendants alleging that their negligence caused the 1974 collision and that the concussion she suffered in that accident caused her epilepsy. Defendants brought a third-party action against the Frocks on their indemnity agreement seeking indemnification for any damages awarded plaintiff and their costs

and attorney's fees in defense of Cheryl's actions.

The case was tried to the jury which returned a verdict for defendants. The jury also found in favor of third-party plaintiffs but awarded them no damages.

Plaintiff raises a number of points on appeal concerning the court's conduct of the trial. For the sake of brevity, we combine the statement of facts and the discussions of the many legal issues plaintiff has raised.

Plaintiff's first point pertains to her counsel's voir dire of the jury. He attempted to ask the veniremen whether any of them had a preconceived belief that epilepsy can only result from heredity. Defendant objected and the court instructed plaintiff to substitute the word "seizures." Plaintiff argues that the court's action was prejudicially erroneous.

■ The trial court has considerable discretion in the control of voir dire, including the control of specific questions. *State v. Scott*, 515 S.W.2d 524, 527 (Mo.1974). That discretion will not be disturbed unless the record reveals manifest abuse and a real probability of harm. *Id.* We are not persuaded that this is a case of manifest abuse presenting a real probability of harm. Counsel was allowed to ask the essence of the desired question; as plaintiff's evidence shows, the most significant symptom of epilepsy is a seizure. Anyone with a preconceived belief that seizures are only due to heredity would in all likelihood believe epilepsy could only stem from heredity. Plaintiff's reliance upon *Littell v. Bi-State Transit Development Agency*, 423 S.W.2d 34 (Mo.App.1967), is misplaced. There the court held that it was reversible error for the trial court not to allow the defendant to ask on voir dire whether any juror had a fixed opinion against the idea that plaintiff could only recover if defendant was negligent. Defense counsel was not allowed to ask any form of the question at all. Here, plaintiff's attorney was allowed to ask the essence of his question.

■ Plaintiff's next point of error concerns Bill Shull's counsel's voir dire of the jury. In the course of his questioning, defendant's counsel stated that plaintiff had to prove her case by a preponderance of the evidence. He then characterized that burden as a "substantial burden." Plaintiff's attorney objected to the characterization and asked that the court admonish the jury to disregard the statement or declare a mistrial. The court instructed defense counsel to confine himself to asking the jury whether they could follow the instructions. The court refused the requested admonishment in order not to draw the jury's further attention to the statement.

Plaintiff finds reversible error in the court's failure to instruct the jury to disregard counsel's characterization. As we have already explained, the court has wide discretion in its conduct of voir dire. *State v. Scott, supra*, 515 S.W.2d, at 527. Plaintiff's objection was sustained and the court in the proper exercise of its discretion wisely chose not to further emphasize the matter to the jury.

■ Plaintiff's third point is that the court erred in limiting her attorney's direct examination of her expert witness, Dr. Pucci. Plaintiff asked the witness whether brain concussions "sometimes" cause epilepsy. The doctor answered, "That's correct." The court sustained defendant's late objection to plaintiff's use of the word "sometimes." We agree with plaintiff that her counsel's question and Dr. Pucci's answer were unobjectionable. An expert's view of possibility or probability is often helpful and proper. *Kimmie v. Terminal R.R. Ass'n*, 334 Mo. 596, 66 S.W.2d 561 (1933); *Gant v. Scott*, 419 S.W.2d 262, 265 (Mo.App.1967). In this instance, however, plaintiff's counsel was immediately allowed to put his question in the form of a hypothetical, and the witness answered that a "direct relation" existed between plaintiff's cerebral concussion and her epilepsy.

■ Plaintiff's attorney continued his examination of Dr. Pucci and asked him if Cheryl's condition was permanent. The

witness responded, "I think so." The court overruled defense counsel's objection to the doctor's use of "I think," but the court instructed the witness not to use words that might be speculative such as "I think so." Plaintiff argues that the court presented a hostile attitude towards the witness by its statement.

We agree with plaintiff that the use of the word "think" or "guess" by an expert witness does not render his testimony inadmissible if he intended to express his opinion or judgment. *Wray v. Schwitzer Co.*, 615 S.W.2d 646, 648 (Mo.App.1981); *Hinrichs v. Young*, 403 S.W.2d 642, 646 (Mo.1966).

The court correctly overruled defendant's objection and allowed the answer to stand. We have thoroughly read the record and can find no evidence of the court's hostility to the witness. In fact, the court seemed to be trying to help the witness in his testimony. The court's admonishment was unnecessary since use of "think" is not necessarily destructive of the witnesses testimony, but the court did not display any hostility to plaintiff's witness.

Plaintiff also argues that the court's hostility to Dr. Pucci is further shown by its solicitous treatment of defendant's expert, Dr. Gale, during plaintiff's cross-examination of the witness. She points to several instances of allegedly prejudicial error in the court's rulings on plaintiff's cross-examination. We find no prejudicial error in the court's actions and do not find the court's treatment of the witness solicitous.

Plaintiff sought to have Dr. Gale admit that he only does medical examinations for defendants. The doctor refused to respond as desired and answered that he does examinations for parties on both sides of lawsuits. The court allowed the witness to answer as he wanted. Plaintiff argues that the court's rulings advised the jury that plaintiff's counsel was harassing the witness. The court is vested with broad discretion in its control of cross-examination, *Myers v. City of Palmyra*, 431 S.W.2d 671, 679 (Mo.App.1968), and counsel cannot argue with the witness by his questions during cross-examination. *Eddings v. Keller*, 400 S.W.2d 164, 174 (Mo.1966). Here counsel appears to have been arguing with the witness, and the court's action was proper. Furthermore, counsel was allowed to ask his question repeatedly, he just did not receive the answer he wanted.

Plaintiff's counsel then attempted to impeach the doctor's credibility with an allegedly prior inconsistent statement. He asked the doctor if he did three to four times more examinations for defendants than for plaintiffs. The witness at first responded, "No, sir. I don't have any—I don't keep track." Counsel then attempted to ask the witness about his testimony in a 1981 trial where the doctor apparently testified that he did three to four times more examinations for defendants than for plaintiffs. Defense counsel objected, and the court sustained the objection. Plaintiff argues the court erred in doing so.

A witness may be impeached by extrinsic proof of a prior inconsistent statement as to material matters. *State v. Tolliver*, 562 S.W.2d 714, 717 (Mo.App.1978). Counsel is bound by the answer of the witness on collateral matters. *Overfield v. Sharp*, 668 S.W.2d 220, 223 (Mo.App.1984). Here the allegedly prior inconsistent statement is clearly collateral. Plaintiff was trying to impeach the doctor's credibility by showing that three years ago he had testified that he did three to four times as many examinations for defendants as for plaintiffs, but in his testimony at this trial he denied that he did so and said that he did not keep track. The number of examinations that the doctor was performing for defendants three years ago was not an issue in the case. Independent proof of that fact would not have been allowed because it does not relate to any of the material occurrences involved in this suit and is, therefore, collateral. *Id.* at 717.

Plaintiff also claims that the court erred in not allowing counsel to inquire of the witness how many times he

testifies as related to the number of examinations and reports that he makes. Once again, counsel was attempting to impeach the witness on a collateral matter. The extent of cross-examination allowed on collateral matters is largely within the discretion of the trial court. *State v. Myers*, 538 S.W.2d 892, 897 (Mo.App.1976). Even if counsel had asked his question and received the response he wanted, the answer would not have impeached his credibility. The court's action did not harm plaintiff and was not an abuse of discretion.

Plaintiff also finds error in the court's not allowing counsel to ask the witness if he always concluded in reports for defendants that he found no evidence of the complained of condition. The court also refused to allow counsel to make an offer of proof on the point. This is another collateral area, and the court did not err in excluding offers of proof concerning impeachment on collateral matters. *State v. Taylor*, 486 S.W.2d 239, 244 (Mo.1972). If plaintiff had tried to introduce some of the doctor's reports, the court could properly have sustained an objection to their use. *State v. Tolliver, supra,* 562 S.W.2d at 714.

Plaintiff's attorney then asked Dr. Gale if the fact that Dr. Forsythe, who had examined the plaintiff, had prescribed Dilantin for her condition indicated that he thought something was wrong with her. Dr. Gale had testified that Dr. Forsythe found no abnormalities. The court sustained defendant's objection. Plaintiff's counsel was allowed to reframe his question and finally got Dr. Gale to admit that Dr. Forsythe would not have prescribed the medicine unless he believed that she needed it. Although not in the form he wanted to use, plaintiff's counsel was allowed to ask those questions, and he received the responses he sought. We find no abuse of the court's discretion.

Plaintiff's next point brings us to the closing argument of Donald Stouffer, Mr. and Mrs. Frock's attorney. Mr. Stouffer was explaining to the jury that his clients' agreement to indemnify the defendants against any liability to plaintiff did not mean that the defendants were not liable to plaintiff. At that point, Mr. Shull's counsel, Mr. Macoubrie, objected and stated that the indemnity agreement related to her claim. Out of the hearing of the jury, the court agreed that it related to the claim but overruled the objection. The court refused to instruct the jury to disregard Mr. Macoubrie's objection or to declare a mistrial. Mr. Stouffer went on to explain that defendants were still liable to plaintiff in spite of the release. The court's failure to instruct the jury to disregard Mr. Macoubrie's objection would not have so affected the merits of this case as to require reversal. The objection was overruled, and the applicable law on the point was ably argued by Mr. Stouffer and correctly explained in the instructions.

Finally, plaintiff complains that the court allowed her only twenty-five minutes for summation. The defendants were each given twenty-five minutes. This is another area within the trial court's discretion. Unless the court denies counsel a reasonable time to present his case, it does not abuse its discretion. *Henderson v. Jackson*, 526 S.W.2d 73, 74 (Mo.App.1975). Plaintiff argues that she did not have time to discuss the release and indemnity agreement, but in his argument Mr. Stouffer covered the subject. Plaintiff's counsel specifies no other points that he did not have time to argue. Therefore, we must conclude that he was allowed a reasonable time to present the case.

Mr. and Mrs. Frock, third-party defendants, raise a number of points about the jury's verdict in favor of third-party plaintiffs on their indemnity agreement. The jury found that defendants were not liable to plaintiff, and we affirm that decision. We do not understand why the Frocks appeal. The jury awarded third-party plaintiffs nothing on their verdict and *they* do not contest that decision. If we did hold that the Frocks were not bound by the agreement, the result would be that they owed defendants nothing. No practical relief could flow from that decision, there-

fore, the points are moot. *Newton v. Regional Investment Co.*, 516 S.W.2d 822, 824 (Mo.App.1974).

For the foregoing reasons, we affirm the judgment.

All concur.