**Lloyd ROBNETT, Plaintiff–Appellant,**

v.

**ST. LOUIS UNIVERSITY HOSPITAL, Defendant–Respondent.**

No. 55350.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 10, 1989.

---

Paul C. Hetterman, St. Louis, for plaintiff-appellant.

Michael J. McDonnell, Laurie A. Scully, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Plaintiff, Lloyd Robnett, sought to recover damages from defendant, St. Louis University Hospital, for injury to his right arm which, plaintiff alleged, was negligently inflicted by defendant's employees while he was under general anesthesia during cardiac surgery. A jury returned a verdict

for defendant and judgment was entered accordingly. Plaintiff appeals; we affirm.

Plaintiff was transferred from Bethesda General Hospital to St. Louis University Hospital for open heart surgery. On October 5, 1981, Dr. Glenn Pennington performed the cardiac by-pass operation. Plaintiff developed a hemorrhage which required a second operation within twelve hours of the first. When he ultimately regained consciousness, plaintiff complained of pain and numbness in his right arm and hand.[1]

Plaintiff was discharged from the hospital on October 17, 1981 but returned later that day with a testicular infection. While in the hospital for treatment of this infection, plaintiff was seen in consultation by a neurologist, Dr. Crafts, who diagnosed an ulnar nerve contusion of the right arm.

Plaintiff filed suit against defendant and several of its employees alleging negligence for failing to properly position and pad his right arm during surgery. Proof of negligence was made circumstantially in reliance upon the doctrine of res ipsa loquitur. The surgeon, Dr. Pennington, was dismissed as a defendant at the end of plaintiff's case. The anesthesiologists, Drs. Sang Pyun and Dilber Hussein, were dismissed at the close of defendants' case, leaving the hospital as the only remaining defendant.

Plaintiff's expert witness, Dr. George Hawkins, testified that owing to plaintiff's pre-existing condition his right elbow, and hence ulnar nerve at the elbow, is more prone to trauma. A nursing note from Bethesda General Hospital contained information that plaintiff had abrasions on his forehead and right forearm due to an accidental fall. Dr. Hawkins conceded that such a fall could produce the pain and numbness of which plaintiff complained.

During voir dire, plaintiff's counsel sought to question the panel regarding their willingness to grant a verdict based on circumstantial evidence. After a lengthy discussion between counsel and the trial judge, the following question was allowed:

Is there anyone on the jury panel who would have any reservations about returning a verdict in favor of Mr. Robnett and against one or more of the—one or more of the defendants if after listening to all of the evidence and the reasonable inferences from that evidence and having listened to and considered the instructions given to you by Judge McGuire even though if you felt the evidence and the instructions demanded it, even though Mr. Robnett was not able to pinpoint the exact manner in which his elbow and hand were injured or the identity of the exact person who was responsible for that injury?

Prior to trial, defendant identified Drs. John Martin and James Strickland in its answers to plaintiff's interrogatories as experts who might be used at trial. They were deposed for the purpose of preserving their testimony. Counsel for plaintiff was present at these depositions. Defendant did not call either doctor to testify at trial, even though the jury was told during defendant's opening statement that they would testify.

During the instruction conference, plaintiff's counsel indicated that he intended to argue an adverse inference regarding the failure of Drs. Martin and Strickland to testify. Defendant objected on the ground that the testimony was equally available to both parties. The court decided that plaintiff's counsel could argue that the witnesses were not called, but could not argue that if these witnesses had been called they would have testified in plaintiff's favor.

In his first point on appeal plaintiff contends that he should have been allowed to draw an adverse inference from the fact that defendant intended to call Drs. Martin and Strickland but failed to do so. Plaintiff argues: these doctors were identified during discovery as potential witnesses; they were experts, paid on an hourly basis

---

1. Plaintiff's right arm was crippled as a result of a series of bone infections which pre-existed the surgery. Although the right arm was in a permanent flexion contracture at the elbow, the pain and numbness were new symptons.

by defendant, to testify on defendant's behalf; defendant took the deposition testimony of the doctors to preserve it for presentation at trial; and, defendant informed the jury, during its opening statement, that these doctors would testify in favor of defendant.

■ The failure of an opposing party to put on a key witness raises an inference that the witness' testimony would not be favorable to that party. *Clark v. Skaggs Companies, Inc.,* 724 S.W.2d 545, 555 (Mo. App.1986). It is improper, however, to argue the negative inference if the witness is equally available to both parties. *Leehy v. Supreme Express & Transfer Company,* 646 S.W.2d 786, 790 (Mo. banc 1983). A party's treating and examining physician is presumptively more available to that party. *Hill v. Boles,* 583 S.W.2d 141, 146 (Mo. banc 1979). This presumption may be inapplicable, however, because of the facts of a particular case. *Id.*

■ The factors used to determine whether a witness is equally available include:

1. one party's superior means of knowledge of the existence and identity of the witness;

2. the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and,

3. the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.

*O'Donnell v. Heutel,* 637 S.W.2d 377, 378–379 (Mo.App.1982), quoting from *Hill v. Boles, supra,* at 145–146.

■ It is unnecessary for us to make the broad statement that the witnesses were equally available to plaintiff simply because they were deposed. *See, Leehy,* 646 S.W.2d at 790. Applying the above factors to the facts it is evident that the doctors were equally available to both parties.

Plaintiff knew of the existence of the witnesses and also was aware of the content of their testimony. The doctors did not examine or treat plaintiff, nor were they employees of St. Louis University; they were experts retained on an hourly basis and paid for the time they spent preparing for and participating in the depositions. Neither had any stake in the outcome of the litigation.

Plaintiff argues that *Harrison v. St. Louis—San Francisco Ry. Co.,* 339 Mo. 821, 99 S.W.2d 841 (1936), is dispositive. There it was held that when a physician in the employ of a defendant examines a plaintiff, the fact that the physician's deposition was taken does not make him equally available as a witness. *Id.* 99 S.W.2d at 847–848. Neither of the doctors in the present case examined the plaintiff, nor were they in the permanent employ of St. Louis University. We decline to hold that the temporary use of an expert during a trial amounts to employment.

We find that the trial court did not err in precluding plaintiff from making a negative inference during closing argument as the witnesses were equally available to both parties. Point I is denied.

Plaintiff next argues that the trial court erred in precluding plaintiff's counsel from questioning prospective jurors during voir dire regarding their understanding of the circumstantial nature of the evidence to be presented and their willingness to grant a verdict based solely upon such evidence. He asserts the questioning was proper in that plaintiff was entitled to know if any prospective juror would be unable or reluctant to return a verdict based solely upon circumstantial evidence and without any evidence as to precisely which employee was negligent or the precise time of the negligent act.

■ The nature and extent of voir dire examination is primarily a matter of trial court discretion and will not be disturbed on appeal absent a manifest abuse of discretion. *Anderson v. Burlington Northern Railroad Company,* 700 S.W.2d 469, 473 (Mo.App.1985). This discretion also applies to the control of specific questions.

*Lineberry v. Shull,* 695 S.W.2d 132, 135 (Mo.App.1985). Counsel is allowed reasonable latitude in examining prospective jurors. Counsel may not, however, explain the court's instructions, nor may counsel inform the jury of the applicable law. *State v. White,* 722 S.W.2d 92, 94 (Mo.App. 1986); *State v. Beatty,* 617 S.W.2d 87, 92 (Mo.App.1981).

■ The trial court allowed the issue of circumstantial evidence to be placed before the jury, and no complaint has been made as to the appropriateness of the trial court's instructions on the subject. The fact that counsel was not allowed to ask the exact questions he wanted to ask is inconsequential. The trial court properly exercised its discretion regarding the form of the question by refusing to allow counsel to instruct the jury on the law concerning res ipsa loquitur. We find no manifest abuse of discretion. Point II is denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.