**Janice and Americus JOHNSON, Appellants,**

v.

**CREATIVE RESTAURANT MANAGEMENT d/b/a Fred P. Ott's, Respondent.**

**No. WD 49834.**

Missouri Court of Appeals, Western District.

June 27, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

---

Stanley L. Wiles, Kansas City, for appellants.

Lee M. Baty, Theresa A. Otto, Kansas City, for respondents.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Janice Johnson and her husband Americus Johnson, appellants herein, instituted this action in an effort to recover damages for personal injuries allegedly sustained as a result of a "slip and twist" at respondent's eating establishment, Fred P. Ott's. After a full trial, the jury returned a verdict for the respondent. Thereafter, the trial court denied appellants' motion for new trial on the ground that the jury's verdict was against the weight of the evidence. This appeal followed.

Appellants first contend the trial court erred in allowing into evidence portions of hospital records authored by Dr. John Wubbenhorst, a psychologist who consulted with Mrs. Johnson. Appellants next claim the trial court erred in allowing into evidence portions of employer records that reveal the appellants' plans for a four-day cruise. Lastly, the appellants argue the trial court erred in denying their motion for new trial because the jury's verdict is "completely against the weight of the evidence." We affirm the judgments of the trial court.

The facts and procedural history of the case are not complicated. On March 17, 1989, Mrs. Johnson and two co-workers had breakfast at Fred P. Ott's. Mrs. Johnson testified that she was wearing shoes with a high heel and that as she was exiting Fred P. Ott's she crossed over a rug or mat near a stand-up bar. Mrs. Johnson testified that while crossing the rug she lost her balance. She testified that an indentation or hole in the flooring beneath the rug caused her to lose balance but that she prevented a fall by grabbing onto the bar railing. Doing so, she testified, caused a twisting back injury.

Mrs. Johnson further testified that she was seen at a Prime Health facility on March 19, 1989, for her alleged injury. She returned to Prime Health the following week. An x-ray of her back was taken at this time and therapy and medication were administered. Mrs. Johnson testified that she was ultimately put on bed rest and remained on this for approximately six months. During this period of treatment, Mrs. Johnson testified that she underwent several diagnostic tests although all were returned negative. She testified further regarding additional treatment that was sought and received.

Mrs. Johnson testified that upon her return to work she experienced discomfort sitting at her desk. She stated that her employer provided a raised desk and chair and that the injury adversely affects various other physical and sporting activities such as bike riding, grocery shopping and house cleaning.

On cross-examination, Mrs. Johnson testified that she has worked overtime since the accident and has received a good job performance rating. She also reiterated that the various medical tests administered were all returned negative relative to her alleged injuries. Mrs. Johnson acknowledged that prior to this current slipping incident, in 1984, she was injured in an automobile collision. She also testified that after this current incident, in February 1990, she fell in a parking lot. She testified that she received compensation for both of these other injuries.

Tsyzu Woolridge, Mrs. Johnson's co-worker, testified next for appellants. Ms. Woolridge stated that she had breakfast with Mrs. Johnson on March 17, 1989, at Fred P. Ott's and that she was following behind Mrs. Johnson as they were existing the restaurant. Ms. Woolridge testified that she observed the slip and twist incident and that she heard someone warn her and Mrs. Johnson about the hole in the flooring. Ms. Woolridge believed the warning came from a waitress employed by respondent, but she could not positively identify the speaker.

Angela Paxton, another of Mrs. Johnson's co-workers, testified regarding Mrs. Johnson's physical condition while at work. She stated that Mrs. Johnson works at a raised desk, alternates between standing and sitting, and tends to walk abnormally. Ms. Paxton admitted on cross-examination that Mrs. Johnson appears able to perform her job and that she has observed Mrs. Johnson work overtime since the slip and twist incident.

The jury was then discharged for the day, and the court and the attorneys subsequently held a conference concerning the admissibility of those portions of the hospital records

maintained by Dr. Wubbenhorst and describing Mrs. Johnson's psychological test results. Argument was heard, and the trial court ruled that certain portions of Dr. Wubbenhorst's notes are admissible.

Trial resumed the following day with the video deposition of appellants' witness, Dr. Theodore Foster. After a bench conference held outside the presence of the jury, appellants then solicited testimony from Jacqueline Lewis and Mr. Johnson. Both witnesses testified that Mrs. Johnson's previously active lifestyle has slowed dramatically since the 1989 slip and twist incident. Appellants' counsel next read admissions and some portions of Mrs. Johnson's medical records into the record. Respondent's counsel read the deposition of Dr. Theodore Sandow, Jr., and appellants' counsel read the cross-examination of Dr. Sandow.

Respondent's counsel then read portions of the deposition of its witness, Jack Garlach, and called Lori Pierpoint, a waitress for respondent, to the stand. Ms. Pierpoint testified that warning signs had been placed at each end of the rug upon which Mrs. Johnson claims to have slipped and twisted. Ms. Pierpoint stated that she did not observe Mrs. Johnson's twisting incident but that she did hear Mrs. Johnson say that someone could fall on the rug and make a lot of money. Respondent's counsel next read from Mrs. Johnson's medical records, including the notes of the psychologist, Dr. Wubbenhorst. Appellants' counsel continued to object to the admission of these records. Respondent's counsel also introduced into evidence records from Mrs. Johnson's employer that reveal Mr. and Mrs. Johnson's plans for a four-day cruise beginning July 15, 1991.

Appellants' counsel then read another portion of Dr. Wubbenhorst's notes as part of their rebuttal evidence. Mrs. Johnson also testified in rebuttal, denying she had stated that someone could fall on the subject rug and make a lot of money.

The respondent moved for a directed verdict at the close of all the evidence, but the trial court overruled it. An instruction conference was held and the court subsequently submitted the instructions to the jury. Counsel for both parties made closing arguments. The jury was then discharged and, after less than one hour of deliberations, returned with a verdict for the respondent.

■ Appellants' principal complaint is that the court erred in allowing respondent's counsel to introduce and read to the jury a portion of the hospital records regarding Mrs. Johnson. They argue that the notes of the psychologist, Dr. Wubbenhorst, are not relevant, are prejudicial and are not expert opinions but rather represent mere guesses or conjectures. Appellants insist that the doctor's use of the word "suggests" prevents his records from being characterized as expert opinion. The following is the portion of Dr. Wubbenhorst's notes read to the jury by the respondent's counsel and objected to by the appellants:

Followup with patient to review MMPI. She asks what the results of the MMPI were and I shared those with her. I will make a brief review for the record. The validity analysis *suggests* the test items were responded to evasively and defensively. Quiet attempts to minimize or deny problems with personal or social adjustment. The profile *suggests* the test pattern is still, however, within acceptable validity range. The validity analysis *suggests* that while the patient may have good social skills and ego strength, she may be resistant to psychotherapy.... Profiles similar to those who may be inclined to unconsciously use physical complaints to secure some form of secondary gain such as to manipulate others or to evade responsibility. Profiles are similar to those who show up frequently looking for financial compensation for an injury or an illness.

(Emphasis added). Appellants' primary argument is that introduction of this evidence made Mrs. Johnson's "ability to try and persuade a Jury that she was entitled to receive compensation for her very serious injuries impossible." For the reasons discussed below, we reject their argument.

■ In Points I and II, appellants essentially disagree with the trial court's determination of the admissibility of evidence. However, as to Point I, a trial court is vested

with substantial discretion in the admission of expert testimony. *Miller v. Weber,* 688 S.W.2d 389, 391 (Mo.App.1985). Hospital records, when properly qualified, are admissible generally under the Business Records Act. Section 490.680, RSMo.1994. Missouri courts deem the following types of data contained within hospital records admissible: the physical examination findings, the patient's symptoms and complaints, treatment and progress records, diagnosis by those qualified to make them, the results of analyses and laboratory tests, x-rays, the behavior of the patient, and those parts of the patient's history inherently necessary or helpful to the observation, diagnosis and treatment of the patient. *Allen v. St. Louis Pub. Serv. Co.,* 285 S.W.2d 663, 667 (Mo.1956). These portions of a hospital record are admissible unless subject to specific objections such as irrelevancy, inadequate sources of information, self-serving, going beyond the bounds of legitimate expert opinion, or other similar substantive grounds. *Id.*

■■■ Appellants' objections that the subject notes are irrelevant and/or prejudicial are without merit. "The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Brown v. Hamid,* 856 S.W.2d 51, 56 (Mo. banc 1993). The trial court determined that Dr. Wubbenhorst's notes were based upon a diagnostic test, the MMPI. As such, they help explain the examination and diagnosis of Mrs. Johnson's ailments and therefore meet the test of relevancy by aiding the jury in its determination of the respondent's liability. And, relevant and material evidence may not be excluded solely because it tends to prejudice the jury against a party. *Id.* Thus, appellants' counsel was permitted to read additional portions of Dr. Wubbenhorst's records in an effort to rebut any perceived prejudice. Specifically, appellants' counsel read the following to the jury:

> Profiles similar to those who may be inclined to unconsciously use physical complaints to secure some form of secondary gain such as to manipulate others or to evade responsibilities. Profiles are similar to those who show up frequently looking

for compensation for an injury or illness. I am noting here that this profile is only similar. This does not seem this is what the patient is doing.

It was therefore up to the jury to assign the appropriate weight to this otherwise admissible evidence.

■■■ Additionally, as the respondent points out, and contrary to the appellants' brief argument, the testimony of a physician concerning a diagnosis of a patient is admissible even when it is not based on a reasonable degree of medical certainty. *Kilmer v. Browning,* 806 S.W.2d 75, 81–82 (Mo.App. 1991). The ultimate test of the admissibility of expert testimony is whether it will help the jury. *Hendricks v. Missouri–Kansas– Texas R. Co.,* 709 S.W.2d 483, 493 (Mo.App. 1986). As noted above, Dr. Wubbenhorst's notes help explain the examination and diagnosis of Mrs. Johnson's ailments and therefore aid the jury in its determination of the respondent's liability. The use of the words "think" or "guess" by an expert witness does not render his testimony inadmissible if he intended to express his opinion or judgment. *Lineberry v. Shull,* 695 S.W.2d 132, 136 (Mo. App.1985). To avoid semantic distractions, neither should the word "suggests."

Appellants' Point I is denied.

■■■ For their Point II, appellants assert the trial court erred in admitting records maintained by Mrs. Johnson's employer which reveal a scheduled four-day cruise. They claim this evidence is irrelevant and offered solely for the purpose of prejudicing the jury against the appellants.

As noted under discussion of Point I, "[t]he test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Brown v. Hamid,* 856 S.W.2d at 56. Appellants insist that because the cruise was scheduled to occur almost three years after Mrs. Johnson's alleged slip and twist, this evidence has no relevancy. However, Mrs. Johnson's testimony at trial was that she is still very physically limited because of the incident occurring in 1989. Indeed, she testified at great length about her physical limitations and described how she now shops at

only one grocery store, cannot operate a vacuum cleaner, etc. We believe the admitted evidence is therefore relevant to the issue of Mrs. Johnson's claimed injuries and has a purpose other than mere prejudice to the jury.

Point II is denied.

The appellants argue in Point III that the trial court erred in denying their motion for new trial because the jury's verdict was completely against the weight of the evidence. According to the appellants, "all of the evidence" showed that respondent was "100% at fault" in causing Mrs. Johnson's "violent twisting injury" and that "there was *no* evidence" that Mrs. Johnson was at fault in any way. Essentially, they disagree with the jury verdict that no one was at fault in this incident.

However, appellants' Point III presents nothing for appellate review. Weighing evidence remains a trial court function, and an appellate court cannot rule on the weight of the evidence in a jury tried case. *Warren v. Thompson*, 862 S.W.2d 513 (Mo.App.1993). The trial court's overruling of a motion for new trial on this ground constitutes a conclusive determination. *Warren*, 862 S.W.2d at 514.

In any event, there was substantial evidence to support the jury's verdict. Respondent offered two witnesses who testified that warning signs were placed by the hole in the floor. In addition, the jury had before it the many diagnostic tests performed upon Mrs. Johnson—all of which were returned showing either normal, negative or no findings.

Appellants' Point III is denied.

Affirmed.

All concur.