**Jacqueline Maree SIGRIST, a minor, by and through her next friend, Rita SIGRIST, Plaintiff–Appellant,**

**and**

**Jack D. Sigrist and Rita Sigrist, Plaintiffs,**

**v.**

**Michael S. CLARKE, M.D., Defendant–Respondent.**

**No. 20345.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 1996.

Motion for Rehearing or Transfer Denied Nov. 14, 1996.

Application to Transfer Denied Dec. 17, 1996.

---

Charles B. Cowherd, Farrington & Curtis, P.C., Springfield, for appellant.

James W. Newberry, Schroff, Glass & Newberry, P.C., Springfield, for respondent.

BARNEY, Presiding Judge.

The parents of Jacqueline Maree Sigrist, a minor, sought damages on behalf of themselves and their daughter against Dr. Michael S. Clarke, M.D., an orthopaedic physician, (Respondent) for medical malpractice. Following a jury trial, a verdict was received in favor of Respondent on all issues and a judgment in accordance with the verdict was entered by the trial court. Jacqueline Maree Sigrist (Appellant), by next friend, appeals presenting three points relied on. We reverse and remand for new trial.

Appellant, then age 11, was injured on October 11, 1988, when the bicycle she was riding was struck by a car. She suffered a posteriorly displaced compound fracture of both of the bones (the tibia and fibula) in her lower left leg. Respondent performed two surgeries on Appellant's leg at a Springfield, Missouri, hospital. This was followed by Appellant undergoing additional surgery by Dr. Roy Holland and several surgical procedures at Shriners Hospital in St. Louis, Missouri.

Appellant developed an equinus contracture, which is a condition where her left foot could not be brought up to a 90 degree angle, causing her to walk with her heel elevated and eventually causing her left leg to be shorter than her right. Additionally, the toes of her left foot began to claw into a rigid, raised, closed position.

Appellant contends that her condition was brought about by Respondent's negligence in initially failing to diagnose and then properly treat an ongoing compartment syndrome in her left leg.

A compartment syndrome is a condition that results when, after trauma, swelling occurs within a muscle compartment (in Appellant's case, a grouping of a set of muscles found in her left leg) that is constricted by fascia (a tough inelastic tissue surrounding a muscle compartment). The swelling creates pressure within the muscle compartment and

unless timely relieved, usually by the cutting away of constricting fascia within 8 to 12 hours of the swelling, it will eventually cause muscle and nerve tissue to die. The condition is irreversible.

In her first point, Appellant contends that the trial court erred in excluding medical opinions set forth in certain Shriners Hospital records and that these exclusions were prejudicial to her case. In her second point, Appellant contends that the trial court erred in excluding two exhibits that sought to summarize voluminous medical records already admitted into evidence. In Appellant's third point, she complains of trial court error in prohibiting her proffered witness, a registered nurse, from testifying that the symptoms of a compartment syndrome were present in Appellant's medical records that the witness had reviewed.

Discussion

Appellant's first point complains of trial court error in excluding from evidence, during her direct examination, certain medical opinions set forth in the Shriners Hospital records, being pages two and three of Exhibit 7. Additionally, she complains that the court erred in excluding from evidence, during her rebuttal, the medical opinions set forth in the Shriners Hospital records, specifically page one of Exhibit 8 and page three of Exhibit 7.

Appellant shows that during the direct examination of Appellant's expert witness, Dr. Edwin Season, he was asked whether the findings contained on pages two and three of Exhibit 7 supported his opinion that the Appellant did in fact have a compartment syndrome while under Respondent's care. The trial court refused to allow Appellant to use pages two and three of Exhibit 7 on the basis that they were based on hearsay and were speculative.

In rebuttal, Appellant's counsel offered page three of her Exhibit 7 and page one of Exhibit 8, the latter being the Shriners Hos-

pital record for the admission of March 17, 1992. Both offers were refused by the trial court. The court stated that: "The language, status post compartment syndrome is not a diagnosis by the maker of the record but rather a prediction of the cause for the injury that is diagnosed or condition that is diagnosed, so it is refused."[1]

This Court concludes that the trial court erred in refusing to allow Dr. Season to refer to pages two and three of Exhibit 7 and page one of Exhibit 8.

■ "Hospital records, when properly qualified, are admissible generally under the Business Records Act. Section 490.680, RSMo 1994." *Johnson v. Creative Restaurant Management*, 904 S.W.2d 455, 459 (Mo. App.1995). The provisions of the Business Records Act are to be liberally construed. *Allen v. St. Louis Public Serv. Co.*, 285 S.W.2d 663, 666 (Mo.1956); *see also Koenig v. Babka*, 682 S.W.2d 96, 100 (Mo.App.1984).

■ "It is well established in Missouri law that '[a] proper expert medical opinion contained in a hospital record should ... be accorded dignity equal to that of a similar opinion from the witness stand; ...'" *Koenig*, 682 S.W.2d at 100.

■ "The mere fact that the records include a statement of expert medical opinion does not bar admission of the records. Once the hearsay objection is overcome by qualifying the document as a business record, it is of no consequence that the expert witness is not available for cross-examination." *Miller v. Engle*, 724 S.W.2d 637, 640 (Mo.App.1986).

■ However, the qualification of a hospital record under the Business Records Act does not necessarily make all parts of the record automatically admissible. Objectionable parts may be excluded if proper specific objection is made. *Boland v. Jando*, 395 S.W.2d 206, 207 (Mo.1965). Notations in the record based upon speculation and conjecture

1. Respondents objected to pages two and three of Exhibit 7 and page one of Exhibit 8 on the basis that Appellant was not treated at the Shriners Hospital for a compartment syndrome and that she was principally seen by residents. He ar-

gued that the findings were speculative, based on a nursing admission note and hence lacked factual foundation for the conclusions reached and were hearsay on hearsay.

are not admissible. *LaMantia v. Bobmeyer,* 382 S.W.2d 455, 462 (Mo.App.1964).

Pertinent portions of Appellant's Exhibit 7 excluded by the trial court read as follows:

Page 2:

Impression: 14 year old white female who is apparently status post compartment syndrome involving the anterior and lateral compartments with destruction of the EHL, EDL, and peroneal function, now with a fixed equinus deformity.

Page 3:

Initial History and Physical Examination

Addendum

The patient was presented to Dr. Rich and x-rays were obtained. Dr. Rich agrees with the diagnosis of probable equinus deformity, status post compartment syndrome. X-rays revealed no evidence of bony block, therefore it was agreed that she should undergo a posterior capsulotomy of the ankle, probable heel cord lengthening, claw toe repair, and probable IP fusion of the first toe.

[signed] William R. Martin, M.D.

Resident Surgeon

[signed] Margaret M. Rich, M.D.

Orthopaedic Surgeon

Pertinent portions of excluded page one of Exhibit 8 read as follows:

03/17/92

Final Diagnosis

Status post compartment syndrome, equinus deformity of the left foot, claw toe deformities.

Admission Diagnosis: Status post compartment syndrome, equinus deformity of the left foot, claw toe deformities.

[signed] Michael B. Grillot, M.D.

Resident Surgeon

[not signed] Vilray P. Blair, III, M.D.

Staff Orthopaedic Surgeon

■ The appropriate test for admissibility of specific portions of medical records is whether the person whose opinions are recited in the record could have testified regard-ing those portions if present at trial. *See Allen,* 285 S.W.2d at 667; *see also Koenig,* 682 S.W.2d at 100. Clearly the three physicians signing their respective names to the exhibits in question could have testified to Appellant's physical and medical condition at trial based on their expert knowledge and personal observation of Appellant. "An expert witness may base an opinion 'upon matters within his personal knowledge or observation, upon competent evidence in the case or upon both.'" *Division of Family Servs. v. Guffey,* 795 S.W.2d 546, 551 (Mo.App.1990) (italics omitted); *see also White v. American Republic Ins. Co.,* 799 S.W.2d 183, 193 (Mo. App.1990). As live witnesses they would have been able to explain their impressions and diagnosis.

■ A review of page two of Exhibit 7 shows the initials "WRM/vb," suggesting that Dr. William R. Martin was the author of the remarks, findings and opinion contained therein. Contrary to Respondent's counsel's statement at trial, there appears to be no evidence in the record showing that any of the opinions or findings found in the exhibit were derived from remarks made by a nurse. Also, on page three of Exhibit 7 both Dr. Martin and Dr. Rich have affixed their signature to the document. Consequently, Exhibit 7 does not contain a hearsay within a hearsay as to Dr. Rich. Moreover, in *State v. Graham,* 641 S.W.2d 102, 107 (Mo. banc 1982), the court rejected a contention that it was error to permit a doctor to base his opinion upon the medical findings made by another doctor.

Likewise, in Exhibit 8, Dr. Michael B. Grillot, M.D., affixed his signature to page one and without reservation he concluded in his final diagnosis that her condition was "[s]tatus post compartment syndrome...." It should be noted that Dr. Grillot's impressions and conclusions were based on his personal examination of Appellant during a four day hospital stay (the exhibit recites an admission date of 03/17/92 and discharge date of 03/20/92). During this course of time he operated on Appellant's left leg, ankle and foot. Again, there is no proof found in Exhibit 8 tending to suggest that Dr. Grillot's

impressions and diagnosis were derived from nursing sources.

Although there is a recital of "apparently status post compartment syndrome" on page two of Exhibit 7, in review of the totality of Exhibit 7 and the diagnosis made by Appellant's treating physicians, the conclusion as to Appellant's condition being "status post compartment syndrome" was based on more than mere speculation. "The use of the words 'think' or 'guess' by an expert witness does not render his testimony inadmissible if he intended to express his opinion or judgment." *Johnson*, 904 S.W.2d at 459. "To avoid semantic distractions, neither should the word 'suggests.'" *Id.; see also Lineberry v. Shull*, 695 S.W.2d 132, 136 (Mo.App. 1985). In the context of this particular case the use of the word "apparently" before the words "status post compartment syndrome" was not so speculative as to preclude its use as part of the impressions and diagnosis as determined by the treating physician, Dr. Martin.

■ Respondent, citing *Workes v. Embassy Food Enters., Inc.*, 592 S.W.2d 864, 867 (Mo.App.1979), contends that despite the exclusion of the proffered exhibits Appellant can show no prejudice from such exclusion. Respondent states that essentially the same statements were in fact put before the jury through the deposition testimony of Dr. William Allen, which was shown on videotape in its entirety, when he quoted from the discharge summaries of Dr. Grillot, Dr. Fanning and Dr. Rich, showing that Appellant had a post-compartment syndrome injury. "An appellate court shall not reverse any judgment of a trial court for error unless the error materially affects the merits of the action. Rule 84.13(b)." *Riley v. Union Pacific R.R.*, 904 S.W.2d 437, 443 (Mo.App.1995).

However, the exclusion of the testimony from at least three of the treating physicians at Shriners Hospital to the effect that Appellant's injuries were the result of a compartment syndrome went to the very heart of Appellant's case. *Dorn v. St. Louis Pub. Serv. Co.*, 250 S.W.2d 859, 866 (Mo.App. 1952); *see also State ex rel. Mo. Highway and Transp. Comm'n v. Pedroley*, 873 S.W.2d 949, 954 (Mo.App.1994). While Dr. Season, Appellant's hired expert witness, testified that Respondent had improperly failed to diagnose and consequently treat a compartment syndrome, it is clear that Dr. Season had little physical contact with Appellant and then only in preparation for litigation. On the other hand, Respondent testified on his own behalf and had the benefit of his expert witness, Dr. Allen. The testimony of the remaining "disinterested" treating physician, Dr. Roy Holland, was equivocal relative to a determination of whether a compartment syndrome ever existed.

In closing arguments, Respondent's counsel remarked that:

So we start this case with the question of, was there a compartment syndrome? On the plaintiffs' side of the case, we have constant picking of the medical records, and we have Dr. Season, and we have Mrs. Sigrist [Appellant].

Respondent's counsel then criticized Dr. Season as being unreliable because he had not actually seen and treated Appellant as a physician.

Had Appellant been allowed to present to the jury the fact that at least three other treating physicians had concurred that Appellant's injuries were the result of a compartment syndrome, this may have had a significant impact on the jury's determination. "Evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence introduced by the respective parties." *Kummer v. Cruz*, 752 S.W.2d 801, 808 (Mo.App.1988); *see also Wilkerson v. Prelutsky*, No. 66263 slip op. at 6, — S.W.2d —, —, 1996 WL 511450 (Mo.App.E.D., September 10, 1996). The trial court's ruling in refusing to allow Dr. Season to refer to pages two and three of Exhibit 7 and page one of Exhibit 8 "clearly offends the logic of the circumstances," and constituted an abuse of discretion. *Jennings v. City of Kansas City*, 812 S.W.2d 724, 736 (Mo.App.1991). Appellant's Point One is well taken.

Although Point One is dispositive herein, we review Appellants remaining two allega-

tions of error for the benefit of the parties and the trial court upon re-trial.

■ In her Point Two, Appellant asseverates that the trial court erred in excluding her Exhibits 14–A and 14–B from use at trial. Appellant argues that these exhibits were an aid for the jury, helping them to understand the medical records relating to the nursing care of Appellant on October 12 and 13, 1988.

The exhibits consisted of entries for pain, pain with passive movement, foot color, sensation, pain medications and "actions taken." They also contained a neurovascular flow chart, physicians' orders, a medication chart, graphic sheets and nursing progress notes. The coloration of the chart emphasized Appellant's complications. Various bright colors were used for other entries and categories.[2]

Respondent's counsel objected to the charts as being argumentative, cumulative and incomplete. The trial court refused the offer of the exhibits on the basis that they were argumentative. We do not find that the trial court abused its discretion in refusing the tendered exhibits.

■ The use of summaries to help make voluminous records understandable is approved in *The Bolling Co. v. The Barrington Co.*, 398 S.W.2d 28, 31 (Mo.App.1965). Generally, a summary of records is admissible where the records upon which the summary is based are voluminous, are admissible and are available to the opposing party for inspection. *Ahrens & McCarron, Inc. v. Mullenix Corp.*, 793 S.W.2d 534, 539–40 (Mo. App.1990). Nevertheless, the determination of the admissibility or exclusion of evidence is within the sound discretion of the trial court. Although certain evidence may be relevant, it is within the discretion of the trial court to exclude the evidence if its probative value is outweighed by its prejudicial effect. *See Stevinson v. Deffenbaugh Indus., Inc.*, 870 S.W.2d 851, 860 (Mo.App.1993); *Trejo v. Keller Indus., Inc.*, 829 S.W.2d 593, 596 (Mo. App.1992). Much as in the case of demonstrative evidence, the trial court is clothed with considerable discretion in its admission.

*See McElhiney v. Mossman*, 850 S.W.2d 369, 371–72 (Mo.App.1993). In *Erwin v. State Farm Fire & Casualty Co.*, 618 F.Supp. 1040, 1042 (E.D.Mo.1985), the Court ruled that an exhibit setting forth the contents of a conversation in which certain phrases were underlined should be excluded. The Court stated that it was "an obvious attempt to highlight those portions of the exhibit." *Id.*

In the instant case, we note that pain shots given to Appellant were shown in red, while references to her toes being cyanotic were bright blue. Although the medical data contained in Exhibits 14–A and 14–B was otherwise admissible, it was not an abuse of discretion for the trial court to find that the way in which this data was presented may have been argumentative in nature or unduly prejudicial by emphasizing Appellant's pain or other conditions in color.

■ Additionally, Appellant was not prejudiced by the exclusion of her offered exhibits. *See* Rule 84.13(b), Missouri Rules of Civil Procedure (1995). Although she was unable to have the colorized summary admitted into evidence, the medical records from which the information came were in evidence and both Dr. Season and Brenda Blain, a registered nurse, testified extensively about their contents, including recitations of Appellant's pain, foot color, sensation, as well as the pain medication administered and other actions taken. Lastly, the same chart containing the physical and medical condition of Appellant during October 12 and 13 of 1988, as found in Exhibits 14–A and 14–B, was admitted in black and white transparency in the form of Exhibit 44, for use in over-head projection for the jury's viewing.

■ Generally speaking, "any error in the exclusion of evidence is harmless where the same facts are shown by other evidence." *Long v. Hooker*, 443 S.W.2d 178, 181 (Mo. 1969); *Workes*, 592 S.W.2d at 867. This Court's holding herein, however, should not be interpreted as an affirmation on its part to the prohibition of the use of colors in an exhibit in a courtroom. It is within a trial court's discretion to make such determina-

---

**2.** The exhibits in question were presented to this Court for its viewing during oral arguments.

tions based on questions of relevancy, prejudicial effect, probative value and other pertinent factors.

Appellant's Point Two is denied.

In her Point Three, Appellant argues that the trial court erred when it prohibited Ms. Brenda Blain, a trained registered nurse, from testifying that the symptoms of a compartment syndrome were present in the medical records she reviewed concerning Appellant's hospitalization. Appellant further argues that a registered nurse is qualified to render opinions concerning her assessment of the symptoms of a patient which would indicate the patient's medical condition.

Respondent counters that Ms. Blain did not possess the requisite knowledge, skill or training to give an opinion regarding whether certain symptoms were consistent with or characteristic of compartment syndrome. Respondent argued and the trial court agreed that as a nurse, Ms. Blain could only give a diagnosis or assessment of the presence of symptoms, not an assessment that a certain condition was present based upon those symptoms.

Generally, licensed medical doctors testify as medical experts. On certain limited medical subjects, however, other persons have been permitted to testify. *Cebula v. Benoit,* 652 S.W.2d 304, 308 (Mo.App. 1983). Medical personnel at all levels may be qualified to testify to matters *"within the limited and precise range of their medical specialties." Id.* Ultimately, the admission or exclusion of expert testimony is a matter of trial court discretion. *Wingate v. Lester E. Cox Medical Ctr.,* 853 S.W.2d 912, 918 (Mo. banc 1993); *Butcher v. Main,* 426 S.W.2d 356, 359 (Mo.1968). A trial court's ruling is not to be set aside in the absence of a showing of an abuse of discretion. *See Estep v. Atkinson,* 886 S.W.2d 668, 675 (Mo. App.1994).

A registered nurse is authorized by Section 335.016(9), RSMo 1994 to make an "assessment" of persons who are ill and to render a "nursing diagnosis" in her capacity as a professional adjunct to the treating physician. *Cignetti v. Camel,* 692 S.W.2d 329, 337 (Mo.App.1985). "There can be no ques-

tion that a nurse undertakes only a nursing diagnosis, as opposed to a medical diagnosis, when she or he finds or fails to find symptoms described by physicians in standing orders and protocols for the purpose of administering courses of treatment prescribed by the physician in such orders and protocols." *Sermchief v. Gonzales,* 660 S.W.2d 683, 689–90 (Mo. banc 1983).

Although Ms. Blain is a registered nurse and as part of her training underwent an orthopaedic rotation and was required to learn, among other things, the symptoms of compartment syndrome, there was no evidence to show that she had a particular expertise in orthopedics, particularly one comparable to a specialist in the field.

[W]hen non-doctors are offered to testify not to the specific tasks which they personally perform but to the standard of care which a physician must meet in a particular situation, the offeror of that testimony must show the rather unusual circumstances which make the witness competent to know the standard of a profession of which he or she is not a member. The burden is not a light one. As a practical matter, very few non-doctors are likely to have the intimate acquaintance with standards of care recognized by practicing physicians which expert testimony on the subject requires.

*Cebula,* 652 S.W.2d at 309.

We conclude, therefore, that Ms. Blain lacked the expertise necessary to draw a link between the symptoms from which appellant was suffering and the diagnosis of a compartment syndrome. The trial court did not abuse its discretion in excluding these portions of Ms. Blain's testimony. Appellant's Point Three is denied.

The judgment of the trial court is reversed and remanded for a new trial consistent with this opinion.

MONTGOMERY, C.J., and PREWITT, J., concur.